UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

loanDepot.com, LLC,

    Plaintiff,

v.

STEVE SCHNEIDER, CINDY SMOLIN,
SAMANTHA SIEGEL, FERNANDA
BASKE, BOB BOWMAN, and
CROSSCOUNTRY MORTGAGE, LLC,

    Defendants.

Case No. 1:22-CV-01874

Judge Edmond E. Chang
Magistrate Judge Sheila M. Finnegan

**TEMPORARY RESTRAINING ORDER**

Plaintiff loanDepot.com is a home-mortgage, home-equity, and personal-loan lender. R. 1, Verified Compl. ¶ 2. In this trade-secret and employment-separation case, loanDepot alleges that five former employees accessed, copied, or transmitted (or all three) the company's confidential information as the employees were headed out the door to competitor CrossCountry Mortgage. *Id.* ¶¶ 93–133. The Plaintiff claims that the employees—Cindy Smolin, Samantha Siegel, Bob Bowman, Fernanda Baske, and Steve Schneider (for convenience's sake, the Individual Defendants)—thus violated federal and Illinois trade-secret laws, and breached their employment agreements and fiduciary duties. On top of that, Bowman, Smolin, and Siegel also allegedly solicited, in coordination with CrossCountry, other loanDepot employees to leave the company for CrossCountry, in violation of non-solicitation provisions of the governing employment agreements. *Id.* ¶¶ 81–89, 97.

The Plaintiff has asked for a temporary restraining order to (broadly speaking) recover the trade secrets and confidential information, prevent misuse of the information, and prevent further improper solicitation of its employees. The general test for obtaining a temporary restraining order starts with requiring the plaintiff to show that it will suffer immediate irreparable harm, has no adequate remedy at law, and its claims are likely to succeed. Fed. R. Civ. P. 65(b)(1)(A); *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (preliminary injunction factors); *Girl Scouts of Manitou Council v. Girl Scouts of USA*, 549 F.3d 1079, 1086-87 (7th Cir. 2008) (relying on preliminary injunction factors). To win an *ex parte* TRO, the plaintiff must show that immediate irreparable injury "will result to the movant before the adverse party can be heard in opposition" and that notice to the defendant should not be required. Fed. R. Civ. P. 65(b)(1)(A), (B). If the plaintiff can meet those requirements, then before issuing a TRO, the Court still must balance, on a sliding scale, the nature and degree of the plaintiff's injury, the likelihood of prevailing, the possible injury to the defendants if the TRO is granted, and the public interest. *Girl Scouts*, 549 F.3d at 1086-87.

The record evidence so far—without the benefit of a full adversarial presentation, though the Defendants all appeared through counsel at the TRO hearing—does support loanDepot's assertion that the employees accessed, downloaded, or transmitted loanDepot's confidential information in the couple of weeks before leaving *en masse* for CrossCountry within 11 days of each other. The verified complaint is affied to by Tom Fiddler, Senior Vice President of Production for loanDepot, R. 1 at 58, Compl. Verification, and relies in large part on a forensic examination conducted by

an independent examiner (that is, not a loanDepot employee), Jim Vaughn, R. 8-1, Decl. Jim Vaughn. Here are a few examples of the accessed, downloaded, or transmitted information:

> **Samantha Siegel.** On January 5, 2022, Siegel saved (from loanDepot's servers) an Excel spreadsheet, Main Funded DB.xlsx, which contains information on over 500 borrowers, including their name, employer, birthdate, interest rate, and credit score. Compl. at 29 ¶ 95. And on the date of her resignation, January 16, 2022, Siegel saved a spreadsheet, Siegel DB.xlsx, which listed over 2,000 contacts, including lead source, phone number, birthdate, loan interest rate, and loan-to-value ratios.
>
> **Cindy Smolin.** Smolin is Siegel's mother, Compl. ¶ 36, and the forensic examination revealed several instances in which Siegel accessed spreadsheets, generated from loanDepot's databases, with "Cindy's" in the filename, such as "Cindy's Funded Loans Amount Product" with various suffixes. *Id.* at 30 ¶ 95. For those "Funded Loans" spreadsheets in particular, the spreadsheets contain borrower information such as interest rate, credit score, and loan-to-value ratios. *Id.* Siegel accessed those spreadsheets across January 2, 3, and 11, 2022.
>
> **Bob Bowman / Fernanda Baske.** Baske was a Production Assistant for Bob Bowman. On January 20, 2022—one day before she resigned from loanDepot—Baske forwarded to her personal email account loanDepot training materials, job aids, quick-reference guides, and templates, some of which are marked as "confidential and proprietary." Compl. ¶ 124. And, when she was still ostensibly working for loanDepot, but *after* Bowman had left loanDepot on January 16, Baske forwarded several customer emails to Bowman at his *CrossCountry* email address. *Id.* ¶¶ 115–120, 121–123.
>
> **Steve Schneider.** On the day that he resigned, January 27, 2022, Schneider plugged a USB drive into his loanDepot computer and copied two spreadsheets onto the drive. Compl. ¶ 133. The spreadsheets contained information on hundreds of borrowers, including loan amount, interest rate, and (on one of the spreadsheets), loan-to-value ratio. *Id.*

In addition to the evidence of the misappropriation of trade-secret and confidential information, the current record demonstrates, primarily through emails sent

3

and received on personal email accounts, that Bowman, Smolin, and Siegel also solicited—in coordination with CrossCountry—other loanDepot employees to leave the company for CrossCountry. Compl. ¶¶ 81–89, 97. For example, two of the emails literally bore the subject line "*solicit*—Joey + Davis," likely referring to loanDepot employees Joey Rizza and David Hoefler. *Id.* ¶¶ 83, 86–87 (emphasis added). Bowman, Smolin, and Siegel engaged in this solicitation despite the ban against it in their employment agreements. *Id.* ¶ 58.

All in all, the record evidence demonstrates that loanDepot is likely to succeed on the federal and Illinois trade-secret claims such that provisional injunctive relief is warranted, 18 U.S.C. § 1836(b)(3)(A), 765 ILCS 1065/3(a), as well as on the breach-of-contract claim and fiduciary-duty claims, given the confidential-information and non-solicitation provisions. And CrossCountry is likely to be found liable for aiding and abetting these violations, as well as being primarily responsible for tortious interference with contract. What's more, loanDepot has clearly shown that immediate and irreparable injury will happen right now before the defense can be given a full opportunity to be heard in opposition. Fed. R. Civ. P. 65(b)(1)(A). The misappropriation of customer and prospective customer information is notoriously difficult to reliably reduce to a monetary damages figure, and with regard to the improper solicitation of an employee, it is not as if any court can order an improperly solicited employee to return to work for loanDepot. The defense arguments at the TRO hearing, it must be said, were just that—attorney arguments. No records, affidavits, or any evidence at all was presented for the defense. The Defendants received the TRO motion and

brief via email on April 11, 2022, and still by the time of the April 14, 2022, 4 p.m. hearing, had no responsive evidence to present. So for all the defense proffer of information advanced at the TRO hearing, it is worth noting that neither an individual Defendant nor CrossCountry actually averred—under oath—to anything.

Having said that, the Court does also have to weigh the balance of harms and the public interest to ensure that the proposed TRO does not overstep its connection to the precise scope of loanDepot's likely victory and does not damage innocent customers who are in the midst of a time-sensitive loan process or is already currently being serviced by CrossCountry. Also, the TRO must be sufficiently concrete so that its targets know, with a reasonable degree of certainty, what they must do or must not do. Accordingly, IT IS HEREBY ORDERED THAT:

1. The Individual Defendants, and anyone acting in concert with them, including CrossCountry, are temporarily enjoined and restrained from directly or indirectly:

 a. contacting or soliciting any customer or prospective customer listed on any document or email identified in (i) the Verified Complaint; (ii) Declaration of Jim Vaughn; (iii) Appendix A to this Order; (iv) any documents in the Individual Defendants' possession after they left loanDepot that contain consumer information that was received from or prepared for customers while the Individual Defendants were still employed by loanDepot; and (v) any document that was downloaded from or contains customer information that was downloaded from loanDepot's systems or databases, and that the

Individual Defendants still have in their possession after leaving loanDepot.

    b.    This Paragraph 1 does *not* apply to customers who, as of the entry of this Order: (i) have closed a loan with CrossCountry between January 17, 2022, and the date of this Order; or (ii) customers who have a loan application or refinancing application with CrossCountry.

    c.    Furthermore, this Paragraph 1 does *not* apply to customers or prospective customers whom the Individual Defendants or CrossCountry identifies through a means that is independent of the documents and emails set forth in Paragraph 1(a).

2.    The Individual Defendants shall not solicit or induce, directly or indirectly, any employee of the Plaintiff to terminate their employment with the Plaintiff or apply for employment at CrossCountry.

3.    All of the Defendants, and anyone acting in concert with them, are temporarily enjoined and restrained from accessing, utilizing, relying on, divulging, disclosing, transferring, reproducing, copying, storing, distributing, or misappropriating (i) the documents listed in Appendix A to this Order; (ii) any documents in the Individual Defendants' possession after they left loanDepot that contain consumer information that was received from or prepared for customers while the Individual Defendants were still employed by loanDepot; and (iii) any document that was downloaded from or contains customer information that was downloaded from loanDepot's systems or databases, and that the Individual Defendants still have in their possession after leaving loanDepot.

4. All of the Defendants shall return *all* copies of (i) the documents listed in Appendix A to this Order; (ii) any documents in the Individual Defendants' possession after they left loanDepot that contain consumer information that was received from or prepared for customers while the Individual Defendants were still employed by loanDepot; and (iii) any document that was downloaded from or contains customer information that was downloaded from loanDepot's systems or databases, and that the Individual Defendants still have in their possession after leaving loanDepot.

    a. On or before April 25, 2022, the Defendants must (i) stipulate to and agree with counsel for the Plaintiff on a non-party forensic vendor and (ii) jointly submit to this Court in conjunction with the Plaintiff a forensic protocol to accomplish the return and the remediation (that is, permanently removing the documents from the Defendants' possession) of the documents. The return and the remediation shall be completed by May 23, 2022. The Defendants shall bear the costs of the return and the remediation.

5. Although the Court is not entering a preservation order, the Defendants are warned that they must ensure a complete and fulsome litigation hold. Given the forensic-examination results, the absence of corresponding records and emails on the other side of communications will be highly suspicious.

6. The Plaintiff shall deposit with the Clerk of the Court $75,000 as security for this Order on or before April 19, 2022. But this Order shall immediately go

into effect right now in light of the clear showing of irreparable harm and inadequate remedy at law.

7. This Order shall remain in effect until April 29, 2022. The Court will consider the 14-day extension before that date. The video status hearing of April 18, 2022, remains as scheduled to discuss expedite discovery. Having said that, the Court emphatically emphasizes the need for the parties to engage in good-faith, realistic negotiations on further provisional relief to avoid the need for a disputed preliminary injunction hearing. In employee-separation cases, it is rarely in either side's interest to barrel ahead headlong into fast-paced discovery, which is inevitably an intense resource drain on the parties—and an expensive one at that, because the lawyers are unable to efficiently plan discovery. The corporate parties face offering up Rule 30(b)(6) representatives to answer interrogatories, document requests, and deposition questions, and the Individual Defendants face the prospect of undergoing the same discovery devices and trying to explain the emails, under oath and under cross-examination. The final note on this point, for planning purposes, is that (absent good cause) the preliminary-injunction hearing will require live, in-court testimony so that the Court can make more accurate credibility determinations.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 15, 2022

8

**Appendix A**

All Cindy's Contacts-2022-01-02-18-43-55.xlsx
Main DB.xlsx
Marketing Ideas.docx
Marketing Ideas.pdf
contacts db.xlsx
Main Funded DB.xlsx
THKG Goodies 2021 ALL.xlsx
THKG Goodies 2021 agents.xlsx
Holiday Gift 2020 v2.xlsx
Cindy's Funded Loans Amount Product--2022-01-02-17-25-05.xlsx
Cindy's Funded Loans Amount Product-2022-01-02-18-12-59.xlsx
Cindy's Funded Loans Amount Product-2022-01-03-08-56-41.xlsx
Cindy's Funded Loans Amount Product-2022-01-11-13-14-49.xlsx
Cindy's Funded Loans Amount Product-2022-01-11-13-18-59.xlsx
Cindy's Funded Loans Amount Product-2022-01-11-13-44-14.xlsx
All Cindy's Contacts-2022-01-11-17-44-53.xlsx
All Cindy's Contacts-2022-01-11-18-03-05.xlsx
All Cindy's Contacts- 2022-01-11-18-12-37.xlsx
Main Funded DB(AutoRecovered).xlsx
Siegel DB.xlsx
"Leaderboard" email (Para 97)
"Google Sheets" – "Smolin Loan Pipeline"
"Google Sheets" – "Pre-Approval Tracker"
Contacts-2022.xlsx
All My Contacts-2022-01-23-14-11-06.xlsx
Funded Version 1.xlsx
LO DB – Funded YTD-2022-01-23-16-03-33.xlsx
LO DB – Funded YTD – 2022-01-26-22-03-46.xlsx
LO DB – Funded YTD – 2022 -01-23-14-32-12.xlsx
LO DB – Funded YTD – 2022-01-26-22-04-40.xlsx
Clients 7-26-2021.xlsx
Copy of Funded 2018 to Present with Cont-2019-05-31-07-05-34.xlsx
Copy of Funded 2018 to Present with Cont-2019-09-10-05-21-52.xlsx
All Funded Loans w Borrower Info – 2021 (version 1)