# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **loanDepot.com, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**STEVE SCHNEIDER, CINDY SMOLIN, SAMANTHA SIEGEL, FERNANDA BASKE, BOB BOWMAN, and CROSS COUNTRY MORTGAGE, LLC,**<br><br>Defendants. | No. 22-cv-1874<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Sheila M. Finnegan |

### DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S
### MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

Pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 37.2, Defendant CrossCountry Mortgage, LLC ("CrossCountry") respectfully submits this Motion to Compel to require Plaintiff loanDepot.com, LLC ("loanDepot") to fully comply with its obligations to provide information relevant to the claims and defenses in this action in response to CrossCountry's discovery requests. CrossCountry asks the Court to compel loanDepot to fully respond to CrossCountry's Interrogatory Nos. 2, 3, and 10 and Requests for Production Nos. 3, 4, 5, 8, and 9 for the reasons stated below.

### INTRODUCTION

The Court should order loanDepot to fully answer certain discovery requests from CrossCountry regarding the confidentiality of customer contact information that is at the heart of Plaintiff's claims in this case, as well as its request for injunctive relief. Plaintiff's only discernable claim against CrossCountry (as opposed to its allegations as to what the Individual Defendants may have done) is that, as part of the onboarding of the former loanDepot employees

to CrossCountry, those employees were provided "instructions from CrossCountry about transferring contacts to CrossCountry's Salesforce database for 'marketing' purposes." (Compl. ¶ 95, ECF No. 1.) loanDepot asserts that it is "[a]stounding[]" that CrossCountry would ask the former loanDepot employees to provide information about their "Customer Contacts" and "Business Contacts" (*Id.*) But loanDepot's claims about the confidentiality of basic—and publicly available—contact information, whether on an individual basis or in compilation form, is directly contradicted by its own practice of collecting the exact same information from new employees it hires away from competing mortgage companies, including CrossCountry. loanDepot's practices are directly relevant to whether it can claim confidentiality over such information in this case. *See, e.g., UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F.Supp.2d 854, 866 (N.D. Ill. 2009) (finding no trade secret regarding a price list where employees were permitted to share list prices with customers); *Nalco Chemical Co. v. Hydro Tech. Inc.*, 148 F.R.D. 608, 614 (E.D. Wis. 1993) (granting motion to compel documents relating to "sales information and other materials that [plaintiff] has collected on its competitors [sic] prices and products" because "evidence of the types of competitor information in [plaintiff's] control is relevant to the critical issue of deciding whether the defendants possess [plaintiff's] trade secrets.").

To that end, CrossCountry has served on loanDepot targeted interrogatories and requests for production regarding its treatment of its competitors' customer contact information. Despite CrossCountry's willingness to negotiate and significantly limit its requests, loanDepot has refused to answer CrossCountry's Interrogatory Nos. 2 and 3 and Request for Production Nos. 8 and 9, and attempted to significantly narrow its answers to Interrogatory No. 10 and Request for

Production Nos. 3, 4, and 5. For the reasons discussed below, the Court should compel loanDepot to fully answer these discovery requests.

## BACKGROUND AND COMPLIANCE WITH LOCAL RULE 37.2

In its Complaint, loanDepot asserts five claims against CrossCountry, including claims for: (1) Federal Defend Trade Secrets Act violations; (2) Illinois Trade Secrets Act violations; (3) aiding and abetting breach of fiduciary duty; (4) tortious interference with contract; and (5) tortious interference with prospective economic advantage. (Compl. ¶¶ 140-99, ECF No. 1.) The crux of loanDepot's claims against CrossCountry is built on the same premise: that CrossCountry improperly requested that newly hired employees transfer their customer and referral list to CrossCountry. (*Id*. ¶¶ 4, 10, 78, 93, 140-99.) loanDepot asserts that this information is not only highly confidential, but is a protected trade secret under federal and state law. (*Id*. at ¶¶ 140-62.) Indeed, the very essence of loanDepot's Complaint against CrossCountry is the treatment of the allegedly confidential customer contact lists. (*Id*. at ¶¶ 4, 9, 77-78, 84, 95, 110-33,140-62.)

Despite loanDepot's claim that this information is a highly confidential trade secret, documents revealed to date show that loanDepot itself solicits the exact same type of customer information from individuals it hires from competing mortgage companies. loanDepot requests that new hires, during their onboarding process, send "all of the following items to mretail_marketing@loandepot.com," including "past/current clients, B2B/referral contacts":





The gravamens of loanDepot's claims against CrossCountry are that customer contact information, or compilations of customer contact information, are highly confidential trade secrets, and that CrossCountry acted unlawfully by requesting or accepting such information from the Individual Defendants[1] in this case. Thus, information and documents related to loanDepot's collection and treatment of this information through its "Marketing Get Started Checklist!" (hereinafter "Marketing Checklist" and attached hereto as <u>Exhibit A</u>) and corresponding email address are relevant to the confidentiality issue. As such, on April 26, 2022, CrossCountry served its First Set of Interrogatories and First Set of Requests for Production of Documents. In those discovery requests, CrossCountry sought certain information and documents from loanDepot about the creation and use of the Marketing Checklist (Def. CrossCountry's Interrog. No. 10 and RFP No. 3), information sent to and from the "mretail_marketing@loandepot.com" email address and loanDepot's use of such information (Def. CrossCountry's RFP Nos. 4 and 5), loanDepot's hiring and onboarding of employees hired

---

[1] The term "Individual Defendants" includes the following defendants in the above-captioned matter: Steve Schneider, Cindy Smolin, Samantha Siegel, Fernanda Baske, and Bob Bowman.

from competing mortgage companies (including steps taken to protect customer lists received from such employees) (Def. CrossCountry's Interrog. Nos. 2 and 3), and loanDepot's recruitment or hiring of CrossCountry employees in particular (Def. CrossCountry's RFP Nos. 8 and 9).  The requests and loanDepot's responses are attached hereto as Exhibit B (Pl. loanDepot's Interrog. Resp.) and Exhibit C (Pl. loanDepot's RFP Resp.).

In its responses, dated May 17, 2022, loanDepot either (1) limited the scope of the information it was willing to produce to unreasonably exclude relevant information or (2) flat-out refused to provide responsive documents or information.  For example, loanDepot stated in its response to RFP No. 3 that it would produce the Marketing Checklist (which CrossCountry already has) and certain unspecified "historical versions," but otherwise limited its response to information and communications involving the Individual Defendants.  (Ex. C at RFP Resp. No. 3.)  loanDepot's response to Interrogatory No. 10 was similarly deficient. loanDepot responded by stating that "none of the Individual Defendants have received a copy of the Marketing Checklist, or sent an email to the mretail_marketing@loandepot.com email address since April 1, 2021," a wholly unresponsive answer given that the Individual Defendants were hired by loanDepot well before April 1, 2021.  (*see* Ex. B, at Interrog. Resp. No. 10.)

On May 19, 2022, CrossCountry sent a deficiency letter (attached as Exhibit D) to loanDepot's counsel requesting a meet and confer.  The parties held a meeting via video conference on May 23, 2022 at 3:00 p.m. Central Time, attended by Brent Knight and Michael Platt for CrossCountry, Jeff Widman and Alex Rhoades for the Individual Defendants, and Jessica Pizzutelli and Colton Long for the Plaintiff.  Despite CrossCountry's offer to narrow the scope of the requests, the parties were unable to resolve the dispute. Subsequently, the parties engaged in discussions in an effort to resolve the lawsuit, and agreed to extend several deadlines,

including the deadline for this motion.  The parties were unsuccessful in those efforts, and CrossCountry accordingly seeks this relief.

## ARGUMENT

When a party does not properly respond to discovery requests, the requesting party may move to compel a response.  Fed. R. Civ. P. 37(a).  Federal Rule of Civil Procedure 26 permits discovery on any non-privileged matter "relevant to any party's claim or defense" and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly."  *Doe v. Loyola University Chicago*, No. 18 CV 7335, 2020 WL 406771, *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see Tice v. Am. Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000) ("the scope of discovery should be broad in order to aid in the search for truth").  The party resisting discovery ultimately bears the burden "to show why the request is improper if the discovery appears relevant."  *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 5415155, *4 (N.D. Ill. Nov. 19, 2021); *see also Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) ("the burden is upon the objecting party to show why a discovery request is improper").  If there is any doubt, "courts should err on the side of permissive discovery."  *Wiginton v. CB Richard Ellis, Inc.,* 229 F.R.D. 568, 577 (N.D. Ill. 2004); *see also Coleman v. Ill.*, No. 19 CV 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020).

**I.     Requests Relating to loanDepot's Marketing Checklist Are Relevant to the Claims and Defenses in this Lawsuit.**

The central claim against CrossCountry in this case is that it sent the Individual Defendants "detailed instructions to transfer their entire customer and referral list to CrossCountry."  (Compl. ¶ 4, ECF No. 1.)  loanDepot's federal Defend Trade Secrets Act claim,

6

in particular, alleges that "the identities of customers that utilize loanDepot services, customer information provided by [customers] to loan Depot, the identities of prospective customers, the compilations of customer information … and customer information obtained by the Former Employees by virtue of their employment with loanDepot, are trade secrets." (Compl. ¶ 144, ECF No. 1.) Thus, it is loanDepot's burden to show that the customer contact information at issue is a trade secret. *See, e.g., Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 315 F. Supp. 3d 1044, 1056 (N.D. Ill. 2018) ("'To prevail on a claim for misappropriation of a trade secret under' [the Illinois Trade Secrets Act, a plaintiff] 'must demonstrate that the information at issue was a trade secret.'"); *Packaging Corp. of America, Inc. v. Croner*, 419 F.Supp.3d 1059, 1065 (N.D. Ill. 2020) (under the DTSA, "the plaintiff must first allege facts sufficient to provide notice that the relevant information constitutes a trade secret."). If it fails to meet this burden, then loanDepot's claims fail. *See Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) (affirming trial court's dismissal of trade secrets claim because the "identity of customers is not a trade secret.").

loanDepot's own treatment of the same type of information it contends is confidential is thus directly relevant to the claims it brought in the case. Put simply, if loanDepot asks new hires for the same information from their former employers it now claims to be a trade secret, that fact weighs heavily against a finding of confidentiality. *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502,* 315 F. Supp. 3d 1044, 1058 (N.D. Ill. 2018) ("the most important factor [in determining whether information is a trade secret] is whether and how an employer acts to keep the information secret.") (*citing Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1152 (2009)); *UTStarcom*, 675 F.Supp.2d at 866 (N.D. Ill. 2009) (finding a

price list was not a trade secret where employees were permitted to share list prices with customers).

Yet, despite the importance loanDepot gives its own conception of customer list confidentiality, it has failed to respond to discovery requests specifically tailored to obtain such information. loanDepot cannot be excused from providing this information. *Miller UK Ltd. v. Caterpillar, Inc.* is instructive. No. 10 C 3770, 2013 WL 474380 (N.D. Ill. Feb. 7, 2013). In *Miller*, the plaintiff alleged that Caterpillar misappropriated trade secrets and requested Caterpillar's procedures for protecting trade secrets as part of discovery. *Id.* at *9. At issue was whether Caterpillar made an effort to sufficiently protect Miller's trade secrets in comparison to the measures taken by Caterpillar to protect its own trade secrets. *Id.* The court granted Miller's motion to compel documents relating to Caterpillar's procedures for protecting its trade secrets, overruling Caterpillar's relevancy objections. *Id.* In so doing, the court held that "if Caterpillar was lackadaisical with Miller's information and strict with its own and others, that's certainly relevant to Miller's case." *Id.* Moreover, the court held that "Caterpillar's efforts to protect trade secrets might also be relevant to show that the efforts Miller took to protect its trade secrets were reasonable." *Id.* at *10. The court concluded that the "efforts of what other companies do to protect trade secrets is repeatedly found relevant." *Id*. Likewise, Judge Edmond Chang has previously rejected the argument that industry custom is not a proper basis on which to rely to show reasonable efforts to protect trade secrets. *Von Holdt v. A-1 Tool Corp.*, No. 04 C 04123, 2013 WL 53986, *3 (N.D. Ill. Jan. 3, 2013) (Chang, J.).

Here, CrossCountry's Interrogatory No. 10, seeking information about the creation of the Marketing Checklist and communications to and from mretail_marketing@loandepot.com, is directly relevant to whether the publicly available information that loanDepot alleges

CrossCountry solicited from the Individual Defendants can be considered confidential. Request for Production No. 3 (seeking "all documents regarding the drafting of the Marketing Checklist, documents sufficient to show the author(s) of the Marketing Checklist, all communications transmitting the Marketing Checklist, documents sufficient to identify all recipients of the Marketing Checklist, and all documents referring to the Marketing Checklist"), Request for Production No. 4 (requesting "[a]ll documents and communications between the email address 'mretail_marketing@loandepot.com' and any loan originator hired by loanDepot from January 1, 2017 to the present"), and Request for Production No. 5. (requesting "documents regarding loanDepot's use of any client or referral contact information sent by an incoming loan originator to the email address 'mretail_marketing@loandepot.com' from January 1, 2017 to the present") seek the same type of information and are similarly relevant.

As CrossCountry informed Plaintiff during the meet and confer, it is willing to limit the scope of these requests, both in terms of scope and timeframe. Given that discovery in this case has just begun and CrossCountry does not yet have information sufficient to know the precise dates the Marketing Checklist or the mretail_marketing@loandepot.com email address were in use (although it believes they are still in use today), CrossCountry was not able to narrow the parameters beyond what was sought in its initial requests without potentially prejudicing its right to discovery, and loanDepot was unwilling to consider a compromise proposal in any event. Nonetheless, CrossCountry is willing to limit the specificity of these requests or the corresponding date ranges so long as loanDepot provides specific responses as to the creation, purpose, and use of the Marketing Checklist; provides documents sufficient to show the extent to which the Marketing Checklist was used; provides a reasonable sample of documents and communications to and from the mretail_marketing@loandepot.com email address, including but

not limited to communications and documents related to the Individual Defendants; and provides a reasonable sample of documents showing how loanDepot used contact lists provided to the mretail_marketing@loanDepot.com email address.[2]

## II. Requests Relating to loanDepot's Onboarding Process Are Relevant to the Claims and Defenses in this Lawsuit.

The remaining Interrogatories and Requests for Production subject to this Motion are similarly relevant to the claims and defenses in this case. Interrogatory No. 2 requests that loanDepot "[i]dentify each and every individual loanDepot has hired since April 1, 2021 from any competitor or company providing mortgage loan services" including certain identifying information. Interrogatory No. 3 requests that loanDepot "[d]escribe in detail the onboarding process for each person named in Interrogatory No. 2, including but not limited to, the process for identifying the person as a candidate, the criteria considered when deciding whether to hire such person, agreements entered into between loanDepot and such person, whether the person was asked or was permitted to transfer customer information from a former employer, and any instructions provided to such person to protect the former employer's confidential information." Request for Production Nos. 8 and 9 request similar information regarding loanDepot's recruitment or onboarding of current and/or former employees of CrossCountry.

These requests are relevant because they seek information regarding the steps loanDepot takes to protect customer information in the possession of its competitors as confidential, as well as speak to the industry standards regarding protection of similar information. *See Von Holdt*, 2013 WL 53986, *4 (analyzing industry custom and understanding in the plastic mold making industry when deciding whether plaintiff took reasonable measures to protect information);

---

[2] From the limited documents that have been produced, it appears that the "mretail" email address was later revised to "retail_marketing@loanDepot.com." CrossCountry seeks documents to and from that email address as well.

*Beard Research, Inc. v. Kates*, 8 A.3d 573, 596 (Del. Ch. 2010) (holding that plaintiff took reasonable efforts to maintain the secrecy of recipes for experimental compounds where it considered, among other things, that it was customary in the chemical industry to not use experimental compounds outside of the lab in which they were created); *Waste Mgmt. of Tex. v. Abbott*, 406 S.W.3d 626, 636 (Tex. App. 2013) (considering industry standards for confidentiality when determining whether waste tickets generated by plaintiff that included customer names, pricing rates, and volume information were a trade secret). The onboarding process at loanDepot provides context to the circumstances surrounding loanDepot's treatment of customer lists. And "[i]n many cases, the existence of a trade secret is not obvious" and "requires an ad hoc evaluation of all the surrounding circumstances." *Superior Graphite Co. v. Campos*, No. 19 C 5830, 2020 WL 5210841, at *4 (N.D. Ill. Sept. 1, 2020) (citing *Learning Curve Toys, Inc. v. PlayWood Toys*, Inc., 342 F.3d 714, 723 (7th Cir. 2003).

*Nalco Chemical Co. v. Hydro Tech., Inc.*, 148 F.R.D. 608 (E.D. Wis. 1993), which involved a claim for misappropriation of trade secrets among competitors in the water treatment industry, is on point. In that case, the plaintiff alleged that two employees took trade secret information, including customer lists, when they went to work for the defendant, Hydro. *Id.* at 609-11. In discovery, the defendant requested "sales information and other materials that [Nalco] has collected on its competitors [sic] prices and products" in order to show that "none of the information that [defendant] possesses is a Nalco trade secret." *Id.* at 615-16. The defendant sought to show that the purported trade secrets were generally known in the industry and acquired by plaintiff in the exact same way that the defendant obtained the information. *Id.* The court found the request "relevant to the critical issue of whether the defendants misappropriated Nalco trade secrets" and granted the motion to compel. *Id.* The court held that

11

if the plaintiff sought and obtained competitor information it now claimed to be a trade secret, it "would be probative circumstantial evidence useful to the defendants at trial" to show "that the competitor information they possess about Nalco is not a trade secret . . . ." *Id.* at 616-617.

Here, as in *Nalco Chemical*, loanDepot tries to evade discovery relevant to the issue of whether the customer contact lists at the heart of its claims against CrossCountry qualify as trade secrets. Like the defendant in *Nalco Chemical*, CrossCountry seeks discovery on loanDepot's acquisition and treatment of customer contact information to show that loanDepot itself does not treat such information as confidential when it obtains it from employees newly hired from competitors. The court in *Nalco Chemical* rejected the argument from the plaintiff that "any information that it retains on its competitors, whether trade secrets or not, is totally irrelevant to the question of whether the defendants in this action have misappropriated trades secrets from Nalco." *Id.* at 616. The Court should also reject that argument here.

Without the necessary information and documents to be gathered through discovery, neither CrossCountry—nor this Court—can assess whether the information loanDepot claims is a trade secret actually qualifies as one. Indeed, loanDepot will need to produce such documents and information to even prove its claim. Thus, the extent to which loanDepot solicits customer information from current or former employees of competitors is relevant and proportional to the needs of this case, and the Court should order its production. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."); *Rubin*, 349 F.Supp.2d at 1111; *see also Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001) ("A request for discovery 'should be considered relevant if there is any

possibility that the information sought may be relevant to the subject matter of the action.'")

(citing *AM Intern., Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D.Ill. 1981)).

## **CONCLUSION**

For the foregoing reasons, this Court should compel loanDepot to fully respond to Interrogatory Nos. 2, 3, and 10 and Requests for Production Nos. 3, 4, 5, 8, and 9.


Dated: July 14, 2022 Respectfully submitted,


/s/ *Brent D. Knight*
Brent D. Knight
JONES DAY
110 N. Wacker Drive
Suite 4800
Chicago, Illinois 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
bdknight@jonesday.com

Michael A. Platt (admitted *pro hac vice*)
JONES DAY
NorthPoint
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-7221
Facsimile: (216) 579-0212
maplatt@jonesday.com

*Attorneys for Defendant*
*CrossCountry Mortgage, LLC*

## **CERTIFICATE OF SERVICE**

The foregoing document was served on counsel of record by undersigned counsel on July 14, 2022 by electronic mail through the Court's CM/ECF system.

*/s/ Brent D. Knight*
Brent D. Knight