IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| loanDepot.com, LLC, | |
| Plaintiff, | Case No. 22-cv-1874 |
| v. | Hon. Edmond E. Chang |
| STEVE SCHNEIDER, CINDY SMOLIN, SAMANTHA SIEGEL, FERNANDA BASKE, BOB BOWMAN, JOHN NOYES, and CROSSCOUNTRY MORTGAGE, LLC, | Hon. Sheila M. Finnegan |
| Defendants. | |

**LOANDEPOT.COM, LLC'S MOTION TO COMPEL DISCOVERY RELATED TO CROSSCOUNTRY MORTGAGE, LLC'S RECRUITING PRACTICES**

In this action, Plaintiff loanDepot.com, LLC ("loanDepot") asserts that CrossCountry Mortgage, LLC ("CrossCountry") has, and continues to, (i) tortiously interfere with contracts between loanDepot and its employees; and (ii) aid and abet loanDepot employees in breaching their fiduciary duties to loanDepot. loanDepot's claims are based on allegations that relate, but are not limited to, activities that occurred during CrossCountry's recruitment and hiring of the Individual Defendants. The evidence amassed by loanDepot to date (and despite CrossCountry's refusal to engage in relevant discovery) fully supports the conclusion that CrossCountry is engaged in an organized and nationwide effort to target and recruit loanDepot employees using improper means and methods, which include payment of monetary incentives for new hires to recruit other loanDepot employees to also defect from loanDepot.

loanDepot propounded document requests and interrogatories to CrossCountry seeking basic information related to these allegations at the outset of the case. In October, loanDepot renewed its discovery requests based on information that came to light during expedited discovery, which was also underscored by then-recent defections and attempted recruitment of loanDepot employees near

1

Atlanta, Georgia, in Park Ridge, Illinois, and in Minnesota. Specifically, loanDepot requested (among other things), that CrossCountry supplement its discovery responses and produce:

- Documents and communications since December 1, 2021 between CrossCountry and loanDepot employees or CrossCountry new hires whose last most recent employer was loanDepot pertaining to override incentives and other monetary incentives offered to loanDepot managers and loan officers for recruiting loanDepot employees (RFP No. 4);

- Documents and communications regarding the recruitment, hiring, or employment of loanDepot employees in Minnesota, Illinois, and Georgia occurring from December 1, 2021 to the present (RFP No. 3);

- A list of current or former employees of loanDepot with or about whom CrossCountry has had contact since November 1, 2021 regarding employment or potential employment with CrossCountry, including the date(s) of such communications and the substance thereof (Irog. No. 3); and

- A list of all loanDepot documents, data, ESI, or other loanDepot property in CrossCountry's possession—including information that CrossCountry is claiming is "public contact information"—transferred by any recent CrossCountry hire in Georgia (Irog. No. 8).

Without basis, CrossCountry refused to provide loanDepot with the information requested. CrossCountry's intransigence coupled with its continued improper recruiting tactics has necessitated the filing of this motion.

## BACKGROUND

I. **loanDepot Has *At All Times* Alleged CrossCountry Is Engaged in Improper Recruiting Practices That Include and Extend Beyond the Individual Defendants in This Case**

　**A. loanDepot's Original Complaint Asserted Claims Against CrossCountry Stemming From CrossCountry's Company-Wide Recruiting Practices**

loanDepot seeks discovery about recruiting practices that have been at issue in this case from the very start. In its Complaint (filed April 11), loanDepot alleged that the coordinated employee departure involving the Individual Defendants was "consistent with CrossCountry's well established *modus operandi* to grow its business not through lawful, legitimate means, but by corporate raid designed to cripple the competition." (ECF No. 1, ¶ 10.) loanDepot alleged that it is a "target" for

2

CrossCountry's tactics, that CrossCountry incentivizes recruiters with "bounties" to convert entire loanDepot branches, and that (as of April 11) a New York branch was then-recently raided. (*Id.* ¶¶ 11, 12.)

From Day-One of this proceeding, loanDepot possessed evidence (having been the victim of CrossCountry's raids) to support these claims. (*Id.* (citing text messages from CrossCountry's CEO regarding recruiting bonuses, and evidence connecting Individual Defendants and CrossCountry to the raid on loanDepot's New York branches). loanDepot used that evidence (and more) as the basis for (among other claims) its Tortious Interference with Contract claim, which asserted that if CrossCountry were not enjoined, it would "induce further breaches of the Agreements [signed by the Individual Defendants] **and other loanDepot employee agreements**." (*Id.* ¶ 188 (emphasis added).) Unfortunately, since the filing of the Complaint, loanDepot was subsequently the subject of additional employee raids, and without an injunction, will continue to be.

### B. loanDepot Promptly Served Discovery Seeking the Production of Information About CrossCountry's Recruiting Practices

On April 20, loanDepot propounded expedited discovery requests on CrossCountry that is directly related to loanDepot's claims CrossCountry. Through document requests, loanDepot requested (among other things) the production of: (i) documents regarding the recruitment and hiring of any current or former loanDepot employee from December 1, 2021, to the present; and (ii) communications between CrossCountry and any current or former loanDepot employee (other than the Individual Defendants) since December 1, 2021, and regarding specific topics, including compensation. (*See* loanDepot Requests for Production, Nos. 3 & 4, attached as part of Exhibit 1.[1]) Through interrogatories, loanDepot requested (among other things) that CrossCountry identify: (i) the former loanDepot employees, other than the Individual Defendants, with or about whom

---

[1] To lessen the number of exhibits, loanDepot provides CrossCountry's objections and responses to its document requests and interrogatories with this motion. loanDepot's discovery requests are reproduced therein.

3

CrossCountry has had contact or communicated with since November 1, 2021, regarding employment; and (ii) the loanDepot property in its possession. (*See* loanDepot Interrogatories, Nos. 3, 4, and 8, attached as part of Exhibit 2.) CrossCountry objected to loanDepot's discovery requests and refused to produce any responsive information that related to persons other than the Individual Defendants.

## II. The Limited and Incomplete Discovery loanDepot Has Managed to Gather Fully Demonstrates loanDepot's Entitlement to Full and Complete Discovery Responses

Despite CrossCountry's intransigence, loanDepot was able to use various pieces of information gathered to date to further support its allegations that CrossCountry is, among other things, systematically and tortiously interfering with contracts between loanDepot and its employees and aiding and abetting loanDepot employee fiduciary breaches. This evidence was summarized in the Timeline included in loanDepot's Reply in Further Support of Its Cross-Motion to Enter Preliminary Injunction. (ECF 192, § II(A), ¶¶ 2-4, 8, 30, 31, 37, 57-58, 61-62, 69, 75, 81, 94-95 and 104-105.)

The above-referenced timeline was prepared based on evidence that includes: (i) an internal CrossCountry email from December 2021 that evidences CrossCountry's scheme to target competitor loan originators, recruit them to join CrossCountry, and also bring with them *their entire teams* (*see* ECF No. 192, p. 6 ¶ 2); (ii) text messages from December 2021 between CrossCountry and Bob Bowman discussing specific loanDepot employees in Ohio, New Hampshire, and California as well as the names of loanDepot's largest loan originators as listed on a nationwide leaderboard (*id.* at ¶ 4); (iii) text messages between CrossCountry and Bob Bowman from January 2022 referencing Josh Jones and Jared Hanowski, who are loanDepot employees based out of Park Ridge, Illinois, and Minnesota, respectively, and who both were later recruited by CrossCountry and encouraged to bring their entire teams (and in the case of at least Hanowski, offered a significant bonus to do so). (*id.* at p. 13, ¶ 61); (iv) internal text messages between CrossCountry employees in January 2022 discussing the recent recruitment of loanDepot employees in California and stating that CrossCountry was then-trying to

4

secure more team defections from loanDepot (*id.* at ¶ 62); (v) text messages from January 2022 in which Bob Bowman sent CrossCountry information on loanDepot employees in Massachusetts, Texas, and Florida (*id.* at p. 14 ¶ 69); (vi) January 2022 text message solicitations of a loanDepot employee in California by Bob Bowman telling the employee to join CrossCountry (*id.* at ¶ 75); (vii) October 2022 text messages between CrossCountry and a Park Ridge-based loanDepot employee (Jones) in which CrossCountry invited him to bring his team to CrossCountry (*id.* at p. 18, ¶ 104); (viii) evidence recently uncovered demonstrating that two Minnesota loanDepot employees were recruited by CrossCountry and offered monetary incentives to recruit other loanDepot employees to CrossCountry (*see* Decl. of Tom Fiddler (ECF 112-13, at ¶¶ 2-3); and (ix) the recent *en masse* departure (and coordinated resignations within minutes of each other) of an entire loanDepot branch near Atlanta to join CrossCountry (*See* Reply Brief (ECF 192), at p. 18, ¶ 105).[2]

### III. CrossCountry's Improper and Tortious Recruiting Tactics Have Continued Unabated During the Pendency of This Proceeding

The evidence summarized above provides a substantial and meaningful foundation for loanDepot to obtain discovery that extends beyond merely CrossCountry's recruitment of the Individual Defendants and orchestration of their exodus from loanDepot's Chicago branches. High-performing loanDepot employees who operate in geographically diverse locations and whose names appeared on documents given to CrossCountry in December 2021 were approached, recruited, and hired by CrossCountry throughout 2022 and despite the filing of this lawsuit (e.g., the New York raids occurred in February, March, April, and May 2022; the Georgia raid occurred four months later, in October 2022). *See, e.g.,* Dkt. 123 (attaching text messages between Bowman and CrossCountry's Beth Lewis relating to loanDepot employees to target and attaching loanDepot's internal document with

---

[2] The underlying documents that were used to create loanDepot's timeline are already part of the record and are exhibits to the Pizzutelli Declaration (ECF 186). Given that many of the referenced documents were already provisionally filed under seal, and in the hopes of avoiding submitting the same provisionally-sealed documents over-and-over, loanDepot seeks guidance as to whether the Court would find such re-filing efficient and helpful to the resolution of this motion.

5

loan officer data concerning, among others, Jeff Zulauf, a former loanDepot employee targeted by CrossCountry in the Georgia raid). CrossCountry approached other high-performing loanDepot employees (again operating from geographically diverse locations) and offered financial incentives to those individuals to bring other loanDepot employees with them to CrossCountry. (*See, e.g.*, Fiddler Decl. (ECF 112-13).) All this evidence supports loanDepot's theory advanced in this lawsuit, as more fully explained below, as well as loanDepot's entitlement to discovery on these topics.

**IV.     Compliance With Local Rule 37.2 and Attempt to Resolve This Discovery Dispute**

The discovery sought in this motion is responsive to discovery requests that loanDepot first propounded on April 20, and which loanDepot has since repeated, clarified, and limited in attempts to resolve the parties' discovery dispute.

On October 18—after loanDepot had worked through CrossCountry's belated document production; on the heels of CrossCountry's approaches to loanDepot employees in Park Ridge and Minnesota; and after CrossCountry's hiring of an entire loanDepot branch near Atlanta—loanDepot wrote a letter to CrossCountry and, among other things, requested that CrossCountry supplement its responses to two specific loanDepot document requests (Nos. 3, 4) and three interrogatories (Nos. 3, 4, and 8). In that letter, loanDepot demanded that CrossCountry supplement its production to include documents relating to CrossCountry offering loanDepot employees monetary incentives for recruiting their loanDepot colleagues (RFP No. 4), as well as documents regarding the recent recruitment, hiring, or employment of loanDepot employees in Minnesota, Illinois, and Georgia (RFP No. 3). (*See* 10/18/22 Witz letter, attached as Exhibit 3, pp. 2-3.) loanDepot also demanded that CrossCountry supplement its interrogatory responses to identify loanDepot employees CrossCountry has had contact with since November 1, 2021 regarding employment with CrossCountry (Irog. No. 3), as well as to identify all loanDepot property transferred by any recent CrossCountry hire from loanDepot in Georgia (Irog. No. 8). (*Id.*).

On October 20, CrossCountry responded to loanDepot. CrossCountry asserted that it "will not agree that public contact information belongs to loanDepot"—suggesting CrossCountry has loanDepot information (which it self-servingly is characterizing as "public contact information") that it refuses to disclose or return to loanDepot. (*See* 10/20/22 Knight letter, attached as Exhibit 4, p. 3.) CrossCountry also blanketly refused to respond further to loanDepot's other requests. (*Id.* ("CrossCountry stated its objections to [RFP Nos. 3 & 4, and Interrogatory No. 3] in its responses served on May 11, 2022, and CrossCountry stands of those objections.").) In specific regard to recent recruiting and hiring activities undertaken by CrossCountry in Georgia, Minnesota, and Park Ridge, Illinois, CrossCountry stated only that loanDepot's "misguided insinuations" provided no reason for CrossCountry to reconsider its original objections. (*Id.*) loanDepot responded to CrossCountry's letter on October 28 and told CrossCountry that it believed the parties were at an impasse regarding loanDepot's request for supplemental responses to the above-referenced discovery requests. (*See* 10/28/22 Witz letter, attached as Exhibit 5, p. 2.)

Given the exchange of letters **and CrossCountry's participation therein**, loanDepot was surprised at comments made by CrossCountry's counsel at the November 10 status conference before this Court—comments which caused the Court to remark that CrossCountry "seemed unaware" of the discovery loanDepot now seeks. (ECF No. 193.) Regardless, as requested by the Court, loanDepot did seek an additional conference with CrossCountry on the issues raised in this motion on November 15. (*See* 11/15/22 Pizzutelli email, attached as Exhibit 6.) CrossCountry responded, attempted to explain the confusion caused by its comments to the Court, and stated that its position on the discovery requests for which loanDepot has sought supplementation was unchanged. (*See* 11/15/22 Knight email, attached as Exhibit 7.) The parties are now at impasse on the issues raised in this motion. CrossCountry should be compelled to supplement its responses to RFP Nos. 3 & 4, and Interrogatory Nos. 3 and 8, as outlined above and in detail in loanDepot's October 18 letter.

## ARGUMENT

### I. Legal Standard

It is axiomatic that the party objecting to a particular discovery request (here, CrossCountry) bears the burden of showing why the request is improper. *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at \*4 (N.D. Ill. Apr. 17, 2019). This burden is not met through "reflexive invocation[s]" of boilerplate and unsupported objections. *Id.* (collecting cases). Moreover, when a party narrows or clarifies a discovery request in response to an objection (as loanDepot did here), the objecting party must again explain why the narrowed request remains objectionable. *Id.* at \*6. Failing to do so equates to a failure to carry the burden of showing why the objecting party should not be required to answer even the narrowed request. *Id.* Finally, objections to discovery requests that are not timely raised or developed in a written response are waived unless a court, for good cause, excuses the failure. *Id.* at \*7; *see also BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*, 326 F.R.D. 171, 175-176 (N.D. Ill. 2018) (rejecting belated and "quite unpersuasive" objections).

### II. CrossCountry Has Come Nowhere Close to Satisfying Its Burden to Establish That loanDepot's Discovery Requests are Objectionable

CrossCountry's written responses to loanDepot's document requests and interrogatories are attached in full. The responses to the requests that are relevant to this motion were made on May 11 and have not been supplemented at any time since. In fact, these comprise the sum-total of the objections CrossCountry has elected to "stand on." (*See* Exhibits 4, 7.) CrossCountry's objections are addressed in turn:

**A.** **"General" Objections**: As part of responding to the discovery requests at issue, CrossCountry referred to long lists of "General Statements and Objections," and in the case of loanDepot's interrogatories, "Specific Objections to Instructions and Definitions." (*See* Ex. 1 (RFP's), pp. 1-7; Ex. 2 (Irogs), pp. 1-8.) These "general" objections "serve no purpose in the discovery process," and were "tantamount to not making any objection at all." *See Loughnane v. Zukowski, Rogers,*

*Flood & McArdle*, No. 19 C 86, 2019 WL 13073480, at *5 (N.D. Ill. Dec. 2, 2019). The Court should overrule them out of hand.

    **B.**  **Unexplained and Unsupported Burden Objections**: CrossCountry also invoked a ubiquitous "overly broad and unduly burdensome" objection in response to each of the discovery requests at issue. As with CrossCountry's "general" objections, the Court should disregard and overrule these unsupported burden objections based simply on CrossCountry's complete failure to provide any information of any kind about what documents would have to be reviewed, what costs would be incurred, or how long it would take to respond to loanDepot's requests. (*See* Ex. 1 (RFP's), pp. 10-11; Ex. 2 (Irogs), p. 11). "Any party that relies on a burdensomeness claim must address [the above-referenced] issues to sustain its objections. *Belcastro*, 2019 WL 1651709, at *4. As CrossCountry's burden objections lack factual development, they should be overruled.

    **C.**  **Improper, But Nonetheless Moot, Proportionality Objections**: CrossCountry asserted that the discovery requests relevant to this motion seek information that is "disproportionate to the needs of the case and any preliminary injunction that may reasonably be sought, and inappropriate for expedited discovery." (*See* Ex. 1 (RFP's), pp. 10-11; Ex. 2 (Irogs), pp. 11-12.) The only basis for these proportionality objections is a bald statement that it would be difficult for CrossCountry to identify every person who worked at loanDepot at any point during their career and in any role. (*Id.*) As with CrossCountry's ill-fated burden objections, these proportionality objections do not pass muster because they fail to provide any information, let alone the requisite "specific" information, necessary to sustain a proportionality objection. *Belcastro*, 2019 WL 1651709, at *5-6.

    Even more to the point, however, is that any conceivable merit that CrossCountry's theoretical proportionality objection may once have had vanished on October 18, when loanDepot clarified that it is **not** seeking information about persons far removed from employment at loanDepot, and instead, seeks information **only** about recruiting communications between CrossCountry and either (i) current

9

loanDepot employees or (ii) persons "whose last most recent employer was loanDepot." (*See* 10/18/22 Witz letter, Ex. 3, p. 2.) CrossCountry is plainly aware of the loanDepot employees it is targeting or has hired since December 2021 and has provided no explanation as to why gathering and producing this information would somehow impose a disproportionate burden upon it. By ignoring loanDepot's clarified discovery request, CrossCountry has failed to carry its burden of explaining why it would be disproportionate to the needs of this case to require CrossCountry to substantively respond even to this inquiry. *See Belcastro*, 2019 WL 1651709, at *6 (motion to compel granted; even though defendant initially lodged an objection, it failed to explain why a clarified and narrowed discovery request made in a follow-up letter remained objectionable).

**D.     Assertions About the Discoverability of "Ordinary Course" Recruiting Communications**: The first objection advanced by CrossCountry that is something other than ubiquitous boilerplate came in the following statement, which appears, in substance, across each relevant discovery response:

> "[loanDepot] has no right to discovery of CrossCountry's ordinary course communications with individuals regarding employment opportunities with CrossCountry."

(*See* Ex. 1 (RFP's), pp. 10-11; Ex. 2 (Irogs), p. 11.) CrossCountry leaves the precise basis for this objection unsaid, through loanDepot assumes it to be a relevancy objection.[3]

The problems with CrossCountry's position are legion.

As an initial matter, the relevancy standard for discovery is intentionally broad and designed to "help define and clarify the issues." *Belcastro*, 2019 WL 1651709, at *2-3. Consequently, discovery is "ordinarily ***allowed*** if there is ***any possibility*** that the information sought may be relevant to the

---

[3] CrossCountry followed that statement on October 20 with an assertion that it has "no intention of indulging loanDepot's efforts to litigate every recruitment communication with a loanDepot employee anywhere in the country." (*See* Ex. 4, p. 3.) This position is ironic considering CrossCountry itself sought communications between any loan officer new hire and loanDepot "anywhere in the country."

10

subject matter of the action." *Id.* (emphasis added). Given this broad standard, CrossCountry's attempt to prevent discovery into its recruiting practices because it and loanDepot "compete with each other to recruit employees in a labor market that is highly competitive" is beside-the-point. The point is: CrossCountry is not fighting fair. This is a case involving claims that CrossCountry is—through improper recruiting tactics, among other things—tortiously interfering with contracts that loanDepot has with its employees and aiding and abetting those employees' fiduciary breaches. (*See* First Amended Complaint (ECF 100, ¶¶ 11, 20, 21, 23, 24, 119, 220-221, 227, 229.) The mere fact that CrossCountry and loanDepot are competitors in an industry is no barrier to discovery on topics that are relevant to claims in this case, including loanDepot's request for injunctive relief. *See, e.g., BankDirect Capital*, 326 F.R.D. at 172 (a party's "claimed concern" that answers to a discovery request from a competitor would provide that competitor with a "window" into its business practices and "the manner in which it communicates with customers" was flatly rejected and the response was ordered).

Further, although CrossCountry has not raised—and therefore waived—any specific confidentiality objection to the discovery requests at issue in this motion, the protective order governing the case contains mechanisms that are designed to address CrossCountry's apparent concerns about loanDepot (as opposed to only its outside counsel) reviewing its communications with loanDepot employees.

The even larger problem with CrossCountry's position is the idea that loanDepot must somehow accept as true CrossCountry's self-serving assertion that all of its recruiting communications are innocuous and "ordinary course." As detailed above, loanDepot has already gathered and put forward evidence demonstrating this is untrue, including: (i) a declaration supporting that CrossCountry offered financial incentives to loanDepot employees in Minnesota to join and bring with them their entire teams; (ii) text messages to a Park Ridge employee to the same effect; and

11

(iii) internal CrossCountry emails discussing "recruiting overrides" for at least one defendant in this action and others at CrossCountry. (*See* Fiddler Decl. (ECF 112-13), ¶¶ 2-3; Declaration of Joshua Jones (ECF 112-11), ¶¶ 2-4; Reply Brief (ECF 192), p. 15 ¶ 81 (*citing* a 1/31/22 Sampson email to CrossCountry's CEO regarding recruiting).) Accordingly, CrossCountry's assertion that the only documents responsive to loanDepot's discovery requests are "ordinary course" recruiting communications rings hollow.

Relatedly, the Court should reject CrossCountry's attempt to avoid discovery and recast loanDepot's allegations and documentary evidence as "misguided insinuations." CrossCountry cannot, on the one hand, dismiss loanDepot's allegations as "misguided" and then in the same breadth attempt to thwart discovery on the very same topic.

In sum, CrossCountry is not entitled to block loanDepot's pursuit of evidence to support its claims based on a unilateral determination of what is, and is not, relevant, and its relevancy objection should be overruled. *See Loughnane*, 2019 WL 13073480, at *7 (overruling an "illogical" relevancy objection that was based on a responding party's unilateral view about the scope of his claim); *BankDirect Capital*, 326 F.R.D. at 175 (rejecting the concept that a litigant can "decide unilaterally" what documents it must search for during discovery).

**E.     Unexplained Concerns About Non-Parties**: The final purported objection CrossCountry made in response to the discovery requests now at issue is a statement that "individuals have the right to seek employment with competitors of loanDepot without becoming subject to discovery in this action." The exact basis for this objection is unclear. Regardless, this "objection" is completely without merit.

To begin with, and as is obvious, the mere act of *CrossCountry* providing documents and information to loanDepot that are in *its own* possession and control does nothing to "subject" persons identified therein to discovery in this action. Thus, if anything, this "objection" is premature and

12

theoretically could be revisited should loanDepot take some *future* action (not yet contemplated or announced) that CrossCountry deems objectionable. In similar fashion, the mere act of CrossCountry producing documents and information responsive to loanDepot's discovery requests will not even necessarily identify persons therein *to loanDepot* because (again) the protective order in place allows CrossCountry to disclose the information only to loanDepot's attorneys if warranted under an Attorneys' Eyes Only designation.

As a result, what CrossCountry is left with is an entirely unexplained view that recruiting communications in its possession are beyond the scope of discovery—even in a case challenging the legality of its recruiting conduct—simply because the communications involve non-parties. The Court should reject CrossCountry's circular logic and order CrossCountry to produce the plainly relevant discovery loanDepot seeks forthwith.

## **CONCLUSION**

For the foregoing reasons, loanDepot respectfully requests that the Court grant this motion to compel and order CrossCountry to produce the following information within fourteen (14) days:

A. All documents and communications since December 1, 2021, between CrossCountry and loanDepot employees or CrossCountry new hires whose last most recent employer was loanDepot pertaining to override incentives and other monetary incentives offered to loanDepot managers and loan officers for recruiting loanDepot employees (RFP No. 4);

B. All documents and communications regarding the recruitment, hiring, or employment of loanDepot employees in Minnesota, Illinois and Georgia occurring from December 1, 2021, to the present (RFP No. 3);

C. A list of current or former employees of loanDepot with or about whom CrossCountry has had contact since November 1, 2021, regarding employment or potential employment with CrossCountry, including the date(s) of such communications and the substance thereof (Irog. No. 3); and

D. Identify all loanDepot documents, data, ESI, or other loanDepot property in CrossCountry's possession—including information that CrossCountry is claiming is "public contact information"—transferred by any recent CrossCountry hire in Georgia.

13

Dated: November 18, 2022                     Respectfully submitted,

                                                            loanDepot.com, LLC

                                                            By: */s/ James M. Witz*
                                                                  One of its attorneys

James M. Witz
Richard T. Kienzler
Colton D. Long
Littler Mendelson, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Phone: (312) 372-5520
Email: jwitz@littler.com
        rkienzler@littler.com
        clong@littler.com

Jessica F. Pizzutelli (admitted pro hac vice)
Littler Mendelson, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
Phone: (585)203-3400
Email: jpizzutelli@littler.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on the date shown below he caused a copy of the foregoing document to be filed electronically with the Clerk of the United States District Court for the Northern District of Illinois, which will generate a notice of filing for all counsel of record and provide them access to a copy thereof.

Date: November 18, 2020 　　　　　　　　　　　　 */s/ Richard T. Kienzler*

4876-5503-0079.2 / 114369-1005